Mary Jane LEE et vir, Appellants,

v.

Young DAUGHERTY et al., Appellees.

No. 3261.

Court of Civil Appeals of Texas.

Waco.

June 2, 1955.

Rehearing Denied June 29, 1955.

D. B. Mason, W. J. Durham, Dallas, for appellants.

Robert G. Vial, Earl E. Miller, W. S. Barron, Jr., Dallas, for appellees.

TIREY, Justice.

This is an appeal from the judgment of the District Court of Dallas County denying the probate of an instrument alleged to be the last will and testament of Mrs. Pearl Turner. (The County Court admitted the will to probate.) The court submitted two issues to the jury: (1) "Do you find from a preponderance of the evidence that deceased, Pearl Turner, possessed testamentary capacity, as that term is defined to you herein, at the time of the execution of the instrument dated April 16, 1953, offered for probate as her last will and testament," to which the jury answered "No." (2) "Do you find from a preponderance of the evidence that the making and execution of the instrument which was signed by Pearl Turner on April 16, 1953 * * * was procured by undue influence on the part of proponents, Mary Jane Lee and D. B. Mason, or either of them?," to which the jury answered "Yes."

The court granted contestants' motion for judgment and in the decree we find this recital:

"* * * and it appearing to the court from the findings of the jury that contestants are entitled to a judgment herein, and the court having made such further findings consistent with the judgment herein rendered, finds that

the law and facts are with contestants, and accordingly:

"It is therefore * * * decreed that the contest filed by the contestants (naming them) be, and the same is hereby, in all things granted and all relief sought by contestants is by the court specifically granted.

"And it is further decreed that the will heretofore filed herein be, and the same is hereby, denied probate as the last will of the said Pearl Turner, deceased."

The proponents seasonably perfected their appeal to the Dallas Court of Civil Appeals and the cause is here by order of the Supreme Court.

The judgment is assailed on what appellants designate as twelve points. They have briefed Points 3, 4, 5, 7, 9 and 10 together. These points in effect assail the finding of the jury that the testatrix did not have testamentary capacity at the time of the execution of the will in controversy, and likewise assail the finding of the jury to the effect that the will was procured by undue influence exercised by Mary Jane Lee and D. B. Mason on testatrix. Appellants in effect say that there is no evidence to tender the issue of mental incapacity of the testatrix, nor the issue of undue influence, and further say in effect that in the event there is such evidence, it is insufficient to sustain the affirmative findings thereon by the jury. They further say that the findings of the jury are so contrary to the great preponderance of the "legal" testimony as to require a reversal of the cause in the interest of justice.

We quote the will beginning with Item 3:

"3. I give, bequeath and devise the four (4) room house, and lot on which it is situated, at 1110 South Carroll Avenue, Dallas, Texas, to Charles Turner, to manage, sell, transfer and dispose of as he so desires.

"4. I direct that the undivided one acre and a half (1½) of land that I own in the Taylor Turner Estate, which I became seized and possessed of

as a result of my husband's death be sold; that said land shall be first offered to the living brother and two sisters of Van Taylor Turner and should they refuse to purchase same within ten (10) days after said offer, then said land shall be sold to any one for the highest price obtainable, the proceeds to be deposited with all other money of estate and become a part of same.

"5. I give, bequeath and devise to my nephew, Richard Daugherty, the four (4) room house and 50 x 50 feet of said lot on which house is now situated number of said house is 2411 Hugo, said lot and house is situated on the rear end or north end of a part of lots six (6) and eight (8) Block O/581, Dallas, Dallas County, Texas, to manage convey sell or transfer as he sees fit to do.

"6. I give and bequeath to my niece, Mrs. Willie Mae Henderson, the sum of Seven Hundred Fifty ($750.00) Dollars, cash.

"7. To my nephew, Lorine Dickson, I give and bequeath the sum of Three Hundred ($300.00) Dollars.

"8. To my nephew, Ed Dickson, I give and bequeath the sum of Three Hundred ($300.00) Dollars.

"9. These bequests are payable only if my estate has the cash money to pay same, after all expenses of whatever kind or nature, are paid, as funeral bill, expense of last illness, taxes, State or Federal commission, court costs, bond fees and attorneys fees for probating my will. I am leaving it to the discretion of my executrix, whether same should be paid at all, if paying same would cripple the operation of my estate.

"10. To my beloved, faithful and trusted cousin, Mrs. Mary Jane Lee, I give, bequeath and devise my home place, at 3123 State Street, in fee simple, Dallas, Dallas County, Texas, being remainder and front part of lot six (6) and eight (8), Block O/581, 50 x 100.

Mrs. Mary Jane Lee, at my request and the request of my deceased husband before his death, agreed to leave her own home at a sacrifice and bring her family over to my home, where she could attend to and care for me in my illness. She is waiting on me, cooking for me, washing for me, keeping my body and person clean, attending to my business transactions, and is working with me day and night.

"I am giving her my home place to manage, sell, dispose of, transfer and convey at will and all furniture and household goods as a reward for this service to me, at my death.

"I give, bequeath and devise to my beloved, faithful and trusted cousin Mrs. Mary Jane Lee and her daughter, Mrs. Barbara Jean Wedgeworth, the seven (7) room house, that I own at 3522 Campbell Street, Dallas, Dallas County, Texas, same being lot 21 in block C/633, in fee simple; provided, however, that they must and shall take in their possession and care for and provide food, clothing, medical care and a home with them or in one of the pieces of property willed to them by me, my brother, Young Daugherty, until his death and then provide for his burial; parties named herein are appointed his guardians.

"11. I give and bequeath to Mrs. Lucille Walker, niece, the sum of Five Hundred ($500.00) Dollars.

"12. I give and bequeath to my faithful and trusted cousin, Mrs. Mary Jane Lee, all of the money that I die seized and possessed of now on deposit in the National Bank of Commerce and in the Dallas Federal Savings & Loan Association of Dallas, Dallas County, Texas; further I give and bequeath to Mrs. Mary Jane Lee, all insurance money due me from the Masonic Grand Lodge of Texas if same is not collected before my death; further I give and bequeath to Mrs. Mary Jane Lee, all bond certificates or stock certificates owned by me or my deceased husband

to cash in and receive the proceeds in money therefrom as her own.

"All the rest and residue of my estate whether real, personal or mixed, I give, bequeath and devise to Mrs. Mary Jane Lee, in fee simple.

"My executrix will have in addition to expenses of estate upkeep and insurance to pay and my brother to provide for and she will need all the cash money left and more.

"13. It is my desire and will and I so direct that the Black and Clark Funeral Home, owned by Mr. C. J. Clark, of Dallas, Texas, in case of my death be immediately notified, my body turned over to him to prepare same for burial and that he officiate at my burial.

"14. It is my will and I so direct that my funeral expenses shall not exceed the sum of Two Thousand ($2000.-00) Dollars.

"15. It is my will and I so direct that Mrs. Mary Jane Lee, in case of my death, make all the preparations for my funeral and burial, selecting the casket, deciding what the entire funeral shall cost not exceeding the sum set out herein and no one else is to interfere.

"16. I hereby nominate and appoint Mrs. Mary Jane Lee, executrix of this my last will and testament without bond to carry out the terms and provisions of this my will. In case of the death, resignation or of her inability to serve, then in her name, place and stead, I nominate and appoint her daughter, Mrs. Barbara Jean Wedgeworth, to carry out the terms and provisions of this my will and if she carries out the terms and provisions of this my will, all bequests made herein to her mother, I give, bequeath and devise same to her. That no action be had in court concerning my estate than probating my will, return of inventory appraisement, and list of claim.

"17. I hereby nominate and appoint Attorney D. B. Mason, of Dallas Bar, who now represents me and Mrs. Mary Jane Lee, administratrix, of my deceased husband's estate to, in case of my death handle the probating of my will in Probate Court and to represent my executrix named herein, through to the closing of the estate, as well as in any contest of my will, if any.

"I have implicit confidence in him, I have requested my executrix to continue his retention as her attorney in handling my estate, in case of my death, which she has agreed to do. I have found him to be honest, fair and every legal point has been well explained to me so that I could understand them.

"The bequests made herein have been made by me of my own free will after many months of thought. I am well able and do understand what I have done and no one has persuaded or forced me.

"Few of my relatives seem interested in my welfare, they never come to see me or visit me unless they are trying to find out what I possess and where it is located; it appears they are more interested in what little I have than in my general welfare.

"It is my will that my attorney herein appointed to represent my estate and executrix and who she agrees to continue to retain, shall be paid a fair, reasonable and generous fee for his representing her and the estate.

"I most lovingly ask my devisees and legatees, in loving harmony, in all things, to aid my executrix in carrying out my wishes as expressed in this will; and in order, if possible, to insure this, it is my will, and I do now here expressly provide, and make it a condition precedent to the taking, vesting, receiving or enjoying of any property, benefit or thing whatsoever under and by virtue of this will, that no such devisee or legatee shall in any manner contest the probate thereof, or question or contest the same, or any part or clause thereof, in any judicial proceed-

·ing, and I further will and provide that, should any such devisee or legatee so contest or question, or in any manner aid in any such contest or questioning, he shall thereupon lose and forfeit all right to any benefit and all right or title to any property or thing herein directly or indirectly devised or bequeathed to him; and every such right, title, property or thing is now, by me expressly given, devised and bequeathed to, and shall thereupon vest in, such of my devisees and legatees herein as do not so question or contest, or give aid in such questioning or contesting of, this will or the probate, or any clause or provision, thereof, in the same proportion as to value in which they otherwise take in value of my estate under this will.

"This I make and publish as my last will, hereunto signing and subscribing my name, this 16th day of April, 1953, in the presence of W. K. Flowers, Jr., M. D., and S. L. Brown, M. D., who attest the same at my request.

"her X mark
Mrs. Pearl Turner
'Witnesses to her X mark signature:

Mrs. Stella King
Elice P. Taylor
Texana Blackman
Rosie Lambert
Ben Wilson"

The evidence is without dispute that the testatrix had been married one time only and that her husband predeceased her by some several months; that he was ill for some months before he died, and that during his last illness the testatrix was also very ill and bedridden, and he had an opportunity to see and observe the physical condition, as well as the mental reactions, of testatrix. Testimony was adduced by one of the maids who attended him and his wife during this illness to the effect that he was of the view that his wife's mind was not mentally sound. Much testimony was tendered on the trial (Statement of Facts consisted of over 400 pages)

tendering the issue of mental incapacity of the testatrix, as well as the exercise of undue influence on her in the making of this will, and we are of the view that the testimony tendered each of said issues of mental incapacity and undue influence and that it is sufficient to sustain the finding of the jury thereon in each instance. Since the jury answered the issues submitted to it favorably to the contestants, it is our duty to consider the testimony in the light most favorable to the contestants. We have read the testimony tendered most carefully and we find that it would be impractical to state it here; and if we did so, since the evidence is both pro and con on each of the issues, it would be without precedential value because the jury must determine it. The jury being the trier of the facts, it had the duty and responsibility of passing upon the credibility of the witnesses and determining the ultimate issue before them, and in so doing they could reject or accept the testimony of each witness in whole or in part as they found the facts to be. The foregoing principle is so embedded in our jurisprudence that citation of authority is not necessary to this point; however, see Oil City Iron Works v. Stephens, Tex.Civ.App., 182 S.W.2d 370 (no writ history), points 1 and 2 and authorities there cited for statement of the rule; also the opinion of our Supreme Court in Texas Employers Ins. Ass'n v. Knipe, 150 Tex. 313, 239 S.W.2d 1006, points 1 and 2; also cases in Vol. 36, Tex.Dig., Trial, ☞ 142, 139(1) and 143; also Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, points 1–3, S.Ct.

In passing upon the foregoing points of error, it is the duty of this court to consider and weigh, as best we can, all of the competent evidence introduced upon the trial which tended to throw any light on the ultimate issues, (1) as to whether the testatrix did or did not have testamentary capacity, as that term was defined by the court, on April 16, 1953, the date she is alleged to have executed the will, and (2) if she were of sound mind, to determine whether or not such will was executed as the result of undue influence exercised

upon her by Mary Jane Lee and D. B. Mason, or either of them. If it clearly appears from the record in its entirety that the finding of the jury in answer to Issue No. 1 to the effect that she did not possess testmentary capacity, or, in answer to Issue No. 2, that Mary Jane Lee and D. B. Mason, or either of them, did procure the execution of the will by the exercise of undue influence on testatrix is against the great weight and preponderance of the evidence as a whole to such extent as to be manifestly wrong and unjust, then the points here under consideration should be sustained. If the jury's answer to Special Issue No. 1 had been that the testatrix had mental capacity to execute the will, then the same rule would apply to the jury's answer here to Special Issue No. 2; otherwise, the foregoing points should be overruled under the authority of Briscoe v. Bronaugh, 1 Tex. 326; Choate v. San Antonio & A. P. Ry. Co., 90 Tex. 82, 36 S.W. 247, 37 S.W. 319; Federal Underwriters Exchange v. Hinkle, Tex.Civ.App., 187 S.W.2d 122 (er. ref.); McLean v. McCollum, Tex.Civ.App., 209 S.W.2d 959 (er. ref.); In re King's Estate (King v. King), 150 Tex. 662, 244 S.W.2d 660. In the early case of Briscoe v. Bronaugh, 1 Tex. 326, supra, we find this statement:

"* * * the law has no scales wherein to weigh the different degrees of probability; still less to ascertain what weight of evidence shall amount to proof of any disputed fact. * * * The law, therefore, refers the weight of evidence and the different degrees of probability to the jury, who are to be guided in their decision by their conscientious judgment and the weight under all the circumstances of the case. And where the question is one of fact to be ascertained by the jury, from weighing the evidence and the degree of probability, the court will not interpose for the purpose of granting a new trial, unless it be in order to remedy some manifest error. * * * In such a case, it is not enough that it is not clear that the verdict is right, but it must clearly appear that it is wrong,

to induce the court to set the verdict aside."

The foregoing statement is taken substantially from a recent opinion of this court written by Justice Hale in Grimes v. Mulry, 280 S.W.2d 343.

Going back to the record here before us, we think the testimony is ample to support the verdict of the jury. Perhaps we should say that since the jury found that the testatrix did not have testamentary capacity, the issue of undue influence necessarily passed out of the case; however, if we should be mistaken as to our views in this behalf, then we repeat that it is our view that the evidence is ample to sustain the jury's finding to the effect that undue influence was practiced upon the testatrix, as found by the jury.

Perhaps we should say that it is our view that the opinion of the Supreme Court in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, and the opinions in Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511 (er. ref.); Barksdale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035 (er. ref.); Curry v. Curry, Tex., 270 S.W.2d 208; Pool v. Boyer, Tex. Civ.App., 268 S.W.2d 223 (cause pending in S.Ct. and opinion as yet unreported) and cases there collated present the leading cases on mental incapacity and undue influence as they relate to wills.

We have carefully considered each of the other twelve points in appellants' brief and we are of the view that none presents reversible error.

Since the judgment entered in the District Court did not expressly provide that the judgment of the County Court of Dallas County, admitting the will to probate, be set aside, vacated and held for naught, and that the will offered for probate be denied, and did not further provide that said order entered by the District Court of Dallas County denying the probate of the will be certified to the County Court of Dallas County for observance, the judgment entered by the District Court in this cause is amended to this effect, and, as amended, the judgment of the District Court is affirmed;

and it is further ordered that the judgment of the District Court, as amended, together with the judgment entered in this court, be certified to the County Court of Dallas County for observance.